**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IVY COACH INC.,

*Plaintiff*,

v.

BLUE IVY COACHING

*Defendant*.

Case No. 1:26-cv-00210-MMG

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT BLUE IVY COACHING'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 2

ARGUMENT ....... 3

I. LEGAL STANDARD ....... 3

II. IVY COACH'S FIRST CAUSE OF ACTION FOR FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125 AND THIRD CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114 SHOULD BE DISMISSED ....... 4

1. Strength of the trademark ....... 5
2. Similarity of the marks ....... 8
3. Proximity of the products and their competitiveness ....... 9
4. Evidence of actual consumer confusion ....... 9
5. Evidence that the imitative mark was adopted in bad faith ....... 10
6. Respective quality of the products ....... 11
7. Sophistication of consumers in the relevant market. ....... 12

III. IVY COACH'S SECOND CAUSE OF ACTION FOR VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (ACPA) UNDER 15 U.S.C. § 1125(D) SHOULD BE DISMISSED ....... 12

1. Plaintiff's "IVY COACH" mark is not distinctive or famous ....... 13
2. Plaintiff fails to allege that Defendant did not register, traffic in, or use a domain name that is identical or confusingly similar to Plaintiff's "IVY COACH" mark ....... 14
3. Plaintiff fails to allege bad faith ....... 14

CONCLUSION ....... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*,
277 F. Supp. 2d 356 (S.D.N.Y. 2003)....................6

*1-800 Contacts, Inc. v. JAND, Inc.*,
119 F.4th 234 (2d Cir. 2024) ....................1, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Citigroup Inc. v. Capital City Bank Grp., Inc.*,
637 F.3d 1344 (11th Cir. 2011) ....................9

*E.A. Sween Co. v. A & M Deli Express Inc.*,
787 F. App'x 780 (2d Cir. 2019) ....................4

*Gibbons v. Malone*,
703 F.3d 595 (2d Cir. 2013)....................3

*Gioconda L. Group PLLC v. Kenzie*,
941 F. Supp. 2d 424 (S.D.N.Y. 2013)....................13, 15

*Gottlieb Dev. LLC* v. *Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008)....................5

*JTH Tax LLC v. AMC Networks Inc.*,
694 F. Supp. 3d 315 (S.D.N.Y. 2023)....................5, 10

*Kaplan, Inc. v. Yun*,
16 F. Supp. 3d 341 (S.D.N.Y. 2014)....................15, 16, 17

*Katz v. Modiri*,
283 F. Supp. 2d 883 (S.D.N.Y. 2003)....................10, 11

*Keiler v. Harlequin Enters. Ltd.*,
751 F.3d 64 (2d Cir. 2014)....................3

*Lang v. Ret. Living Pub. Co., Inc.*,
949 F.2d 576 (2d Cir. 1991)....................100

*Le Book Publishing, Inc. v. Black Book Photography, Inc.*,
418 F. Supp. 2d 305 (S.D.N.Y. 2005)....................7

*Lewittes v. Cohen*,
No. 03 Civ. 189, 2004 WL 1171261 (S.D.N.Y. May 26, 2004)....16

*Louis Vuitton Malletier S.A.* v. *Warner Bros. Ent. Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012)....5

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
454 F.3d 108 (2d Cir. 2006)....4

*McAllister Olivarius v. Mermel*,
298 F. Supp. 3d 661 (S.D.N.Y. 2018)....13

*OffWhite Prods., LLC v. Off-White LLC*,
480 F. Supp. 3d 558 (S.D.N.Y. 2020)....5

*Plus Products v. Plus Discount Foods, Inc.*,
722 F.2d 999 (2d Cir. 1983)....9

*Polaroid Corp. v. Polarad Elec. Corp.*,
287 F.2d 492 (2d Cir. 1961)....5, 8, 9, 12

*Presto Prods., Inc. v. Nice-Pak Prods., Inc.*,
9 U.S.P.Q.2d 1895 (T.T.A.B. 1988)....9

*Savin Corp. v. Savin Grp.*,
391 F.3d 439 (2d Cir. 2004)....5

*Streetwise Maps, Inc. v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998)....55, 7

*Time, Inc. v. Petersen Publishing Co. L.L.C.*,
173 F.3d 113 (2d Cir. 1999)....4

**Statutes**

15 U.S.C. § 1056....6

15 U.S.C. § 1125....*Passim*

Federal Rule of Civil Procedure 65....2

Local Civil Rule 7.1(a)(2)....1

Defendant Blue Ivy Coaching ("**Defendant**" or "**Blue Ivy**"), by its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Civil Rule 7.1(a)(2), and this Court's Individual Practices, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint ("**FAC**") filed by Plaintiff Ivy Coach Inc. ("**Plaintiff**" or "**Ivy Coach**"). As discussed herein, Plaintiff has not and cannot state a cause of action against Blue Ivy and the FAC should be dismissed, with prejudice.

## PRELIMINARY STATEMENT

This case is built on an overreach: Plaintiff seeks to turn ordinary, descriptive words—"ivy" and "coach/coaching"—into a monopoly over the entire college admissions consulting space, sweeping in Defendant's distinct brand BLUE IVY COACHING.

Plaintiff's efforts fail, however, because it is not plausible that consumers are likely to confuse Plaintiff's IVY COACH and THE IVY COACH marks with BLUE IVY COACHING. Plaintiff's allegations in the FAC focus on shared use of "ivy" and "coach/coaching," but those are precisely the type of descriptive or commonly used components that do not, without more, support a plausible inference of likely confusion, particularly where Defendant's mark begins with the differentiating term "BLUE," altering the marks' overall appearance, sound, and commercial impression. Accordingly, Plaintiff's Lanham Act claims should be dismissed because the confusion theory is implausible. *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 255 (2d Cir. 2024) (dismissing Lanham Act claims).

Plaintiff also attempts to cast this trademark dispute as cybersquatting. That effort fails for independent reasons. The Anticybersquatting Consumer Protection Act ("ACPA") targets conduct undertaken with a "bad faith intent to profit," a term of art that is not satisfied by simply alleging infringement or competitive use of a domain name, as Plaintiff does here. Without more, the FAC fails to state any claim, and dismissal with prejudice is warranted.

## BACKGROUND

Plaintiff describes itself as a college admissions consulting company which provides counseling services for college and graduate school admission. FAC, ¶ 11. Plaintiff further alleges that it owns trademark rights in IVY COACH and THE IVY COACH for those services (collectively, "**Plaintiff's Marks**"). *Id.*, ¶¶ 2, 11-14, 53.

Blue Ivy is a competitor, offering similar services under the name BLUE IVY COACHING (the "**Blue Ivy Coaching Mark**"), including through the domain blueivycoaching.com. FAC, ¶¶ 4, 15, 20-22, 46.

Plaintiff's theory of trademark infringement is that Defendant's name and domain "contain[] the dominant elements 'Ivy' and 'Coaching'" and that Defendant purportedly includes "IVY COACH" in "metadata" or search-related materials. FAC, ¶¶ 22, 34, 38-40, 55, 57. Plaintiff also alleges an ACPA violation on the theory that Defendant "includes the entire 'IVY COACH' mark" in the www.blueivycoaching.com domain name and intends to profit by diverting clients. *Id.*, ¶¶ 46, 49.

On January 21, 2026—before Defendant had been served or appeared in this action—Plaintiff sought emergency injunctive relief to enjoin Defendant's use of the Blue Ivy Coaching Mark and the www.blueivycoaching.com domain. The Court denied Plaintiff's motion. In the Court's January 23, 2026 order denying Plaintiff's motion for a preliminary injunction [Dkt. No. 12, Order Denying Motion for Preliminary Injunction] (the "**Order**"), the Court first held the motion was procedurally deficient because Plaintiff did not indicate it had served Defendant; the Court therefore treated the motion "in reality" as a request for an ex parte temporary restraining order under Federal Rule of Civil Procedure 65. Dkt. No. 12, p. 1. The Court denied the requested emergency relief because Plaintiff failed to justify ex parte treatment and, in any event, failed to demonstrate a likelihood of success on the merits of its trademark claims. *See id*. The Court further

determined that, "Plaintiff [] also failed to show that that 'Ivy Coach' and 'Blue Ivy Coaching' are 'identical or confusingly similar,' [and failed to show] a likelihood of success on the merits concerning its Anticybersquatting Consumer Protection Act claim." *Id.*, at p. 4 n.3.

**ARGUMENT**

**I. <u>Legal Standard</u>**

A complaint must be dismissed if it fails to allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (internal citations omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II. Ivy Coach's First Cause of Action for False Designation of Origin Under 15 U.S.C. § 1125 and Third Cause of Action for Trademark Infringement Under 15 U.S.C. § 1114 Should Be Dismissed

Ivy Coach fails to adequately plead false designation of origin under 15 U.S.C. § 1125(a) and trademark infringement under 15 U.S.C. § 1114; therefore its First and Third Causes of Action should be dismissed.

In the Second Circuit, the tests for infringement of a registered mark under 15 U.S.C. § 1114 and for false designation involving protectable unregistered rights under 15 U.S.C. § 1125(a) are the same: a plaintiff must show (i) a valid mark entitled to protection and (ii) a likelihood of consumer confusion. *See Time, Inc. v. Petersen Publishing Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 146 (2d Cir. 2006). While likelihood of confusion can be fact-intensive, trademark claims can and should be dismissed when the allegations of consumer confusion are implausible. *See 1-800 Contacts*, 119 F.4th at 255; *see also E.A. Sween Co. v. A & M Deli Express Inc.*, 787 F. App'x 780, 782-83 (2d Cir. 2019).

Regarding the validity prong, Ivy Coach pleads that it is the owner of U.S. Trademark Reg. Nos. "85800920" for IVY COACH and "85800832" for THE IVY COACH. FAC, ¶13. Yet, such registration numbers do not exist. Instead, those eight-digit identifiers appear to be serial numbers. Even if the Court were to overlook this error and infer that Plaintiff intended to reference the corresponding registration numbers, and, for purposes of this motion, accept as true that Plaintiff is the owner of these registrations, the FAC still fails to plausibly allege likelihood of confusion for the second prong.

In an action for trademark infringement, the key question is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *JTH Tax LLC v. AMC Networks*

*Inc.*, 694 F. Supp. 3d 315, 329 (S.D.N.Y. 2023) (citing *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004)). "[S]atisfaction of the likelihood-of-confusion standard requires a probability of confusion, not a mere possibility." *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564 (S.D.N.Y. 2020) (internal quotations and citations omitted). At the pleading stage, "courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a [consumer] will be confused into believing that the plaintiff endorsed the defendant's work." *Id.* at 564-65 (quoting *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012)); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (dismissing infringement claim where it was "simply not plausible" that ordinarily prudent consumers would be confused).

Courts in this Circuit consider the *Polaroid* factors in assessing the likelihood of confusion: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Application of the *Polaroid* factors weigh decidedly in Defendant's favor.

***1. Strength of the trademark***

Plaintiff fails to plead the strength of its alleged marks. The "strength" factor evaluates a mark's distinctiveness and its ability to identify source in the marketplace. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743-44 (2d Cir. 1998). Even where a mark is registered or incontestable, descriptiveness remains relevant in the likelihood-of-confusion analysis and can

undermine the purported strength of a mark. *See e.g.*, *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2003) (holding that registration and incontestability establish protectability, not strength, and finding that "24 Hour Fitness," though incontestably registered, was descriptive in the health-club context; citing plaintiff's disclaimer of "fitness," the court deemed the mark weak for likelihood-of-confusion purposes). Here, the alleged marks incorporate descriptive, disclaimed terms that are commonly used by third parties in the marketplace, rendering the marks weak.

Even overlooking Plaintiff's incorrectly cited registration numbers, a review of the USPTO records for Plaintiff's Marks reveals that the term "COACH" has been disclaimed in both registrations. The Lanham Act allows the USPTO to require an applicant to disclaim "an unregistrable component of a mark otherwise registrable." 15 U.S.C. § 1056(a). The Trademark Manual of Examining Procedure (TMEP) explains that "[t]ypically an unregistrable component of a registrable mark is the name of the goods or services, other matter that does not indicate source, or matter that is merely descriptive or deceptively misdescriptive of the goods or services, or primarily geographically descriptive of them." TMEP 4th ed. 1213.03(a). Both Ivy Coach and Blue Ivy Coaching offer *coaching* services to students and families navigating the college application process (FAC, ¶¶ 2-4), thus the "COACH" element in Plaintiff's Marks is descriptive of these services, and the term "COACH" does not contribute much, if at all, to the overall strength of Plaintiff's Marks. Moreover, the term "IVY" functions in this marketplace as a reference to "Ivy League" admissions, and not as a uniquely source-identifying term. While Plaintiff alleges that its marks are distinctive, rather than descriptive, because they "require consumers' imagination to reach a conclusion as to the feature and nature of Ivy Coach's services" (FAC, ¶ 35), this is not enough to sufficiently allege that Plaintiff's Marks are inherently distinctive (or, if descriptive, that

they have acquired distinctiveness through secondary meaning). The Court's January 23, 2026 Order denying Plaintiff's motion for a preliminary injunction acknowledges this point, finding that "'Ivy' is a *clear* reference to 'Ivy League,' rather than any quality or characteristic unique to Plaintiff's product." Dkt. No. 12, p. 3 (emphasis added).

Indeed, courts in this Circuit dismiss infringement claims when, as here, the overlap between the parties' marks is confined to disclaimed matter, reasoning that overall differences in the marks can eliminate any plausible consumer confusion. *See Le Book Publishing, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2005) (granting motion to dismiss where the only common element "Book" was generic and disclaimed, and holding that the marks' cumulative dissimilarities dispelled confusion). Here, Plaintiff's Marks are constructed from common, descriptive terms, and any overlap with the Blue Ivy Coaching Mark is limited to terms either denoting the type of services offered, or schools to which those services relate—namely Ivy League institutions.

Moreover, extensive third-party use of common components weakens a mark's strength in the marketplace. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998). Plaintiff's own pleading materials reflect that this is a crowded field. Exhibit 6 to the FAC [Dkt. No. 13-6] identifies multiple "IVY"-formative marks registered for college admissions counseling and closely related educational consulting services—such as IVY CENTRAL (Reg. No. 5,812,035), IVY STRATEGY ADVISOR (Reg. No. 5,251,744), and IVY TALENT (Reg. No. 5,098,737)—and further points to active market participants using similar "IVY" branding, including IVY ADMISSIONS, THE IVY INSTITUTE, IVYWISE, and IVY SCHOLARS. These examples, which are incorporated into the FAC, show that "IVY" is routinely used in this industry to reference Ivy League universities, not to uniquely identify Plaintiff as a single source. Critically,

the FAC offers no factual allegations to rebut this crowded marketplace: no survey allegations, no concrete facts showing "IVY" has become uniquely associated with Plaintiff, no meaningful enforcement history against these third-party users, and no pleaded basis to discount the coexisting "IVY"-formative uses Plaintiff's own exhibit identifies. Plaintiff's conclusory assertion that "consumers and competitors associate the marks solely with Ivy Coach" (FAC, ¶ 14) is therefore insufficient to plead a strong mark in the face of such extensive third-party use.

Ultimately, Plaintiff's allegations of "strength" boil down to a single example of comparative advertising in which a competitor referenced Ivy Coach (FAC, ¶ 14), along with the conclusory assertion that Plaintiff's Marks are "more than descriptive" because they purportedly "require consumers' imagination" (*id.*, ¶ 35). These allegations do not plausibly establish that consumers or competitors associate the marks "solely" with Plaintiff, and absent any well-pleaded facts showing marketplace recognition or distinctiveness, the strength of the mark factor weighs in favor of Defendant.

***2. Similarity of the marks***

Similarity is evaluated by comparing the marks "as a whole" in marketplace context and asking whether the overall impressions are likely to confuse ordinary purchasers. *Polaroid*, 287 F.2d at 495. Here, Plaintiff pleads that "Defendant prominently features the terms 'Ivy' and 'Coaching' in close proximity, mirroring the key elements of [Plaintiff's Marks]." FAC, ¶ 22 (emphasis removed). Yet, as explained above, those purported "key elements" are descriptive of both parties' services and a reference to Ivy League universities, so their shared use does not, without more, plausibly render the marks similar. By contrast, the distinguishing element of the Blue Ivy Coaching Mark is the term "BLUE," which always appears before "IVY COACHING." That addition creates a clear visual distinction from "IVY" and "COACHING." It is well established that marks must be compared in their entireties, and that added wording and structural

differences may be sufficient to render marks dissimilar—particularly where, as here, the added wording appears at the beginning of the mark, since consumers tend to focus on and remember the first portion. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349-54 (11th Cir. 2011) (affirming TTAB's finding that CITIBANK and CAPITAL CITY BANK are dissimilar based on differences in appearance, sound, and commercial impression, including the dominant "CAPITAL CITY" wording). The term "BLUE" is the first portion of the Blue Ivy Coaching Mark and is the first term a consumer would read when perceiving the mark. Also, as this Court previously noted, the screenshots Plaintiff attaches of Blue Ivy's website and social media pages prominently display Blue Ivy's logo or favicon, consisting of an uppercase "B" set against a blue or white background. FAC, ¶ 22; Dkt. No. 12, p. 3. This further differentiates the parties' marks when viewed as a whole, and reinforces Blue Ivy's distinct commercial impression.

### *3. Proximity of the products and their competitiveness*

Defendant does not dispute that Plaintiff adequately pleads that the parties are competitors and offer services in the same market. FAC, ¶¶ 4, 15. However, these factors are not determinative and each must be considered in the context of the other *Polaroid* factors, which weigh conclusively in favor of Defendant. *See Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir. 1983).

### *4. Evidence of actual consumer confusion*

Plaintiff alleges that there has been actual consumer confusion, but pleads no facts to support this conclusory assertion. *See* FAC, ¶ 40. The pre-suit correspondence between the parties further undermines this allegation, as Plaintiff's October 22, 2025 demand letter does not identify any instances of actual confusion. Dkt. No. 13-5. Blue Ivy's response letter a week later likewise states that, despite nine years of coexistence, Blue Ivy is unaware of any actual confusion and notes that Plaintiff's letter alleged none. Dkt. No. 13-6. Plaintiff's bare assertion, untethered to any

supporting facts, is insufficient to plead actual confusion, and this factor thus weighs in favor of Defendant.

#### *5. Evidence that the imitative mark was adopted in bad faith*

Plaintiff does not plausibly allege bad faith in Blue Ivy's adoption of the Blue Ivy Coaching Mark. Bad faith turns on whether a defendant adopted a plaintiff's mark "with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any likely confusion between the two companies' products . . . . Strong similarities in marks may support the conclusion that deliberate copying has occurred, but [t]here is a considerable difference between an intent to copy and an intent to deceive." *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 339 (S.D.N.Y. 2023) (granting motion to dismiss and holding that, even if the challenged mark and trade dress were sufficiently similar to suggest deliberate copying, conclusory allegations of willfulness and an "intent to trade on" goodwill did not plead bad faith without additional facts showing an "intent to deceive"). "Even if [a defendant] had both actual and constructive notice of [a plaintiff's] marks, this does not necessarily demonstrate bad faith . . . '[s]election of a mark that reflects the product's characteristics . . . support[s] a finding of good faith.'" *Katz v. Modiri*, 283 F. Supp. 2d 883, 897 (S.D.N.Y. 2003) (citing *Lang v. Ret. Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991)).

Plaintiff tries to infer bad faith primarily from Defendant's transition from "Blue Ivy Mexico" to "Blue Ivy Coaching." *See* FAC, ¶¶ 15-22, 37-39, 55, 57. Specifically, Plaintiff pleads that "Defendant's purpose of using and including the entire 'Ivy Coach' trademark in Defendant's business name, domain name, and metadata appearing on Google search results is to advertise its own college admissions consulting services, which are substantially the same services as provided by Plaintiff" and that Defendant's use of the Blue Ivy Coaching Mark "has the capacity to deceive consumers." FAC, ¶¶ 37, 38. Plaintiff concedes that Defendant changed its name to advertise its *own* services, which, by the time Blue Ivy transitioned from its "Blue Ivy Mexico" mark to the

Blue Ivy Coaching Mark, were being offered in locations beyond Mexico. FAC, ¶¶ 18-20; Dkt. Nos. 13-2, 13-3. This transition is in no way indicative of Blue Ivy's bad faith; and the Court agreed, stating in its Order that "swapping 'Mexico' for 'Coaching' is at least equally consistent with Defendant looking for a more generic term in its name as it seeks to appeal to a new consumer base in the United States." Dkt. No. 12, p. 3, fn. 2. Furthermore, Plaintiff vaguely asserts that Blue Ivy's use of the Blue Ivy Coaching Mark "has the capacity to deceive consumers," but does not plead that Blue Ivy's use demonstrates an *intent* to deceive. Plaintiff fails to plead any specific facts about the alleged "metadata" use supporting an inference that Blue Ivy sought to divert consumers by confusion. *See* FAC, ¶¶ 38-39, 55, 57. At most, Plaintiff alleges that Blue Ivy was aware of Plaintiff's business and its "IVY COACH" mark when it entered the U.S. market. *See* FAC, ¶ 48. That allegation, without more, is insufficient to plead bad faith.

Ultimately, the facts as pleaded in the FAC show that Blue Ivy's shift to the Blue Ivy Coaching Mark reflects the evolution of its services from Mexico-localized offerings to broader college admissions coaching in other locations. Blue Ivy's selection of a more general mark that better reflects the characteristics of its services actually supports a finding of *good* faith. *See Katz*, 283 F. Supp. 2d at 897.

***6. Respective quality of the products***

Plaintiff pleads that Plaintiff's Marks "have come to represent Ivy Coach's high-quality, individualized consulting services," and that its marks have garnered goodwill in the marketplace. *See* FAC ¶ 13-14. Yet, Plaintiff does not offer any facts regarding the quality of Blue Ivy's services; it only alleges that Blue Ivy is a competitor. FAC, ¶ 4, 15. This factor is thus, at most, neutral.

#### 7. *Sophistication of consumers in the relevant market.*

Plaintiff fails to plead any facts in its FAC regarding the sophistication of the consumers in the college admissions coaching marketplace, or that its consumers are not sophisticated enough to distinguish between Plaintiff's Marks and the Blue Ivy Coaching Mark.

Ultimately, because the FAC fails to plead facts that plausibly support confusion under the *Polaroid* factors, it fails to state a claim under § 1125(a) or § 1114, and the First and Third Causes of Action should be dismissed.

## III. Ivy Coach's Second Cause of Action for Violation of the Anticybersquatting Consumer Protection Act (ACPA) Under 15 U.S.C. § 1125(d) Should Be Dismissed

Ivy Coach failed to adequately plead a violation of the ACPA under 15 U.S.C. § 1125(d); therefore, its Second Cause of Action should be dismissed.

To state a claim under the ACPA, a plaintiff must allege (i) that its mark is distinctive or famous, (ii) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to that mark, and (iii) the defendant acted with a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d). The ACPA was originally "passed to protect consumers and holders of distinctive trademarks from cybersquatting" which entails "register[ing] well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." *Gioconda L. Group PLLC v. Kenzie*, 941 F. Supp. 2d 424, 431 (S.D.N.Y. 2013) (internal quotation marks omitted). The ACPA principally targets "cases where a defendant either forces a markholder to purchase a domain name at an extortionate price or diverts customers from the markholder's website to the defendant's own website." *Id.*, at 437. Plaintiff has not adequately alleged either.

### *1. Plaintiff's "IVY COACH" mark is not distinctive or famous*

To plead an ACPA claim, a plaintiff must allege that its mark was distinctive or famous (*i.e.*, widely recognized by the general consuming public as a designation of source) at the time the domain name was registered. *See* 15 U.S.C. §§ 1125(c)(2)(A), (d)(1)(A)(ii)(I)-(II). The FAC alleges, in conclusory fashion, that Plaintiff's "IVY COACH" mark "became distinctive" before Defendant's acquisition of www.blueivycoaching.com, and further characterizes the mark as "famous." FAC, ¶¶ 47-48.

Plaintiff does not plead facts supporting the statutory "famous" standard—no allegations of widespread, general-public recognition across the United States, no market-wide indicia of fame (such as national consumer recognition, extraordinary media saturation, or similar facts), and no nonconclusory allegations that would elevate "IVY COACH" beyond the crowded, descriptive landscape that Plaintiff's own allegations and exhibits describe elsewhere in the FAC. *See* FAC, ¶¶ 11-14, 47-48; Dkt. No. 13-6. Plaintiff's "fame" allegation is therefore a label, not a sufficiently pleaded fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); 15 U.S.C. § 1125(c)(2)(A).

To the extent Plaintiff relies on "distinctiveness," Plaintiff again pleads conclusions untethered to the ACPA's timing requirement. *See* FAC, ¶¶ 11-14, 47. It alleges no concrete, time-specific facts to plausibly establish that that the "IVY COACH" mark is inherently distinctive or had acquired distinctiveness by June 2020, when the www.blueivycoaching.com domain name was registered. FAC, ¶ 21; Dkt. No. 13-4; *see McAllister Olivarius v. Mermel*, 298 F. Supp. 3d 661, 669-70 (S.D.N.Y. 2018) (reciting that ACPA requires a mark to be inherently distinctive or have acquired distinctiveness at the time the domain name was registered and finding the complaint plausibly alleged distinctiveness through secondary meaning because the descriptive mark was supported by allegations of more than two decades of exclusive use, substantial advertising and marketing, and significant media coverage). Rather, Plaintiff merely pleads that

its "'IVY COACH' mark became distinctive prior to Defendant's acquisition of Defendant's domain name." FAC, ¶ 47.

Ultimately, Plaintiff has not plausibly alleged "fame," and its threadbare distinctiveness allegations are likewise insufficient.

***2. Plaintiff fails to allege that Defendant did not register, traffic in, or use a domain name that is identical or confusingly similar to Plaintiff's "IVY COACH" mark***

The ACPA requires a plaintiff to plead that the defendant registered, trafficked in, or used a domain name that is "identical or confusingly similar" to the plaintiff's distinctive mark. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I). Plaintiff alleges that "IVY COACH" is embedded within Defendant's domain, www.blueivycoaching.com, yet fails to allege that the domain is identical or confusingly similar to Plaintiff's mark. *See* FAC, ¶¶ 44-46. The domain is not facially identical, and the FAC fails to sufficiently plead confusing similarity where the domain's distinguishing term "BLUE" appears first and mirrors Blue Ivy's name and branding. *See* FAC, ¶¶ 15-22, 44-46; Dkt. No. 12, p. 4, n.3.

***3. Plaintiff fails to allege bad faith***

Plaintiff also fails to allege that Blue Ivy acted with a "bad faith intent to profit" from Plaintiff's "IVY COACH" mark, as opposed to merely using its own domain in connection with its competing services.

"A key element of any ACPA violation is 'bad faith intent to profit.' The Second Circuit has expressly note[d] that 'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts." *Gioconda L. Group PLLC v. Kenzie*, 941 F. Supp. 2d 424, 431 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). The allegation that a defendant infringed a plaintiff's trademark in "using a confusingly similar domain name, in and of itself, is insufficient to establish the 'bad faith intent to profit' under the ACPA."

*Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014) (dismissing ACPA claim where the complaint pled only that the domain was confusingly similar and registered with "bad faith intent to profit," without facts indicating classic cybersquatting—*i.e.*, intent to profit from the domain itself rather than simply using it in the alleged infringement).

The statute provides nine non-exclusive factors[1] courts may consider when assessing "bad faith intent," including whether the domain reflects the registrant's name, the registrant's bona fide use of the domain for offering services, any offer to sell the domain, use of false contact information, registration of multiple similar domains, and the distinctiveness or fame of the mark in the domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). The FAC gestures at a handful of ACPA factors, but the pleaded facts, taken as true, do not plausibly support "bad faith intent to profit," and several factors cut the other way.

*First*, the factors most probative of "cybersquatting" are entirely absent. The FAC does not allege that Blue Ivy offered to sell, transfer, or assign the domain for financial gain (Factor 6), provided materially false registrant information (Factor 7), or registered multiple domains

[1] Those factors are: (1) the defendant's trademark or other intellectual property rights, if any, in the domain name; (2) whether the domain name consists of the defendant's legal name or a name commonly used to identify the defendant; (3) the defendant's prior use of the domain name in connection with a bona fide offering of goods or services; (4) the defendant's bona fide noncommercial or fair use of the mark on a site accessible under the domain name; (5) the defendant's intent to divert consumers from the mark owner's online location for commercial gain or to tarnish or disparage the mark by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement; (6) the defendant's offer to transfer, sell, or assign the domain name for financial gain without having used, or intending to use, it in a bona fide offering of goods or services, or a pattern of such conduct; (7) the defendant's provision of materially false or misleading contact information, intentional failure to maintain accurate contact information, or a pattern of such conduct; (8) the defendant's registration or acquisition of multiple domain names the defendant knows are identical or confusingly similar to others' distinctive marks or dilutive of others' famous marks; and (9) the extent to which the mark incorporated in the domain name is distinctive or famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX).

incorporating others' marks (Factor 8). *Id*. Those omissions are telling because they are the paradigmatic hallmarks of ACPA "bad faith intent to profit." *See Kaplan*, 16 F. Supp. 3d at 351.

*Second*, the facts Plaintiff does plead line up with legitimate use rather than cybersquatting. Plaintiff alleges that Blue Ivy promotes its services under the name "Blue Ivy Coaching" through its website and online materials and that it switched from "blueivymexico.com" to "blueivycoaching.com" as its offerings expanded. *See* FAC, ¶¶ 20-22. Those allegations support the inference that the domain corresponds to the name by which Blue Ivy holds itself out (Factor 2) and that Blue Ivy used the domain in connection with a bona fide offering of services (Factor 3). Such allegations are the opposite of a "land grab" for a domain name to extract leverage from the markholder. *See Kaplan*, 16 F. Supp. 3d at 351 (citing *Lewittes v. Cohen*, No. 03 Civ. 189, 2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004)).

*Third*, Plaintiff's only "diversion" allegations are conclusory and simply restate the element. Plaintiff alleges that Blue Ivy "intends to profit by diverting or misdirecting clients" from Plaintiff's website. FAC, ¶ 49. But that is precisely the kind of "naked assertion" that does not plausibly plead an ACPA term of art. *See Iqbal*, 556 U.S. at 678-79. And Plaintiff's diversion story depends on the same purported confusion theory the Court already found unsupported. *See* Dkt. No. 12, pp. 3-4, n.2.

Lastly, the "distinctive or famous" consideration (Factor 9) does not rescue Plaintiff's claim. For the reasons set forth above in Argument Section II.1, Plaintiff's marks are built from common, descriptive components in a crowded field, and Plaintiff fails to plead facts establishing that "IVY COACH" was famous or uniquely source-identifying in the marketplace in the manner the ACPA contemplates. *See* FAC, ¶¶ 35, 47-48.

Because the FAC does not plead facts suggesting that Blue Ivy "perpetrated the core activities that threaten to result in the paradigmatic harm that the ACPA was enacted to eradicate," the FAC fails to plausibly allege "bad faith intent to profit," and Plaintiff's Second Cause of Action should be dismissed. *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, Blue Ivy respectfully requests that this Court dismiss all claims in Plaintiff's First Amended Complaint, with prejudice, and award such other and further relief the Court deems just and proper.

Dated: March 10, 2026

Respectfully submitted,

**POLSINELLI PC**

*/s/ Michelle G. Bernstein*
Michelle G. Bernstein
POLSINELLI PC
315 Biscayne Boulevard, Suite 400
Miami, FL 33131
(305) 921-1800
mbernstein@polsinelli.com

Dominique E. Smith
(*Pro Hac Vice Forthcoming*)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
(310) 556-1801
dominique.smith@polsinelli.com

*Counsel for Defendant Blue Ivy Coaching*

## CERTIFICATE OF COMPLIANCE

The above signatory certifies that this Memorandum contains 5454 words, in compliance with Local Civil Rule 7.1(c) and Section 2(B) of this Court's Individual Practices.