# Exhibit A

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (this "Agreement"), effective as of the date of the Order of Dismissal (the "Effective Date"), is by and between Ivy Coach, Inc., a Florida corporation ("Ivy Coach"), and BIC Blue Ivy Coaching A&M, LLC, a Texas limited liability company, d/b/a Blue Ivy Coaching ("Blue Ivy"). Ivy Coach and Blue Ivy shall be collectively referred to herein as the "Parties."

**WHEREAS**, on January 12 and January 28, 2026, Ivy Coach filed a Complaint and the First Amended Complaint in the U.S. District Court for the Southern District of New York under the docket number 1:26-cv-00210 (MMG) (the "Action") alleging that Blue Ivy infringes the IVY COACH and THE IVY COACH trademark registrations, U.S. Registration Nos. 4,379,583 and 4,379,580, respectively (collectively, the "Ivy Coach Marks"), by using "Blue Ivy Coaching" to market and provide college admissions consulting services and including the entire "Ivy Coach" mark in Blue Ivy's domain name.

**WHEREAS,** Blue Ivy denies all such allegations; and

**WHEREAS,** Ivy Coach and Blue Ivy wish to now resolve the dispute for a release of all claims;

**NOW, THEREFORE**, in consideration of the mutual promises in this Agreement, the Parties agree as follows:

1. **Settlement**. Blue Ivy agrees, within six (6) months after the Effective Date, to change its legal entity name from BIC Blue Ivy Coaching A&M, LLC to a name that does not include the terms "ivy" and "coach" or "coaching" together in the same phrase, including "Blue Ivy Coach," "Blue Ivy Coaching," "Ivy Coach," "The Ivy Coach," "Ivy Coaching," any variation or combination with a form of the term "coach", and to rebrand its business name and domain name so that none of the Ivy Coach Marks appears in its legal entity name, business name, trade name, assumed name, d/b/a, domain name, or any other source identifier. For the avoidance of doubt, nothing in this Agreement prohibits Blue Ivy from (a) using the terms "ivy" and "coach" (or variations of those terms, such as the "Ivy League") for their ordinary meanings and not as a trademark to indicate the source of any goods and services, or (b) using the brand "Blue Ivy" or "Blue Ivy Education." To prevent any likelihood of confusion or cybersquatting, Blue Ivy shall, (a) within six (6) months cease redirecting www.blueivycoaching.com to any other website and (b) thereafter, post a static website with no text or redirect on the blueivycoaching.com domain name. Blue Ivy shall, within six (6) months of the Effective Date, remove or cause to be removed all existing public-facing uses of "Blue Ivy Coaching," and any other Ivy Coach Marks, such as "Blue Ivy Coach," "Ivy Coach," "The Ivy Coach," "Ivy Coaching," including from all websites, domain names, social media accounts, social media handles, social media posts (including previously published posts), profiles, usernames, page names, biographies, videos, images, advertisements, marketing materials, directory listings, and any other content owned, controlled, or maintained by Blue Ivy or on

its behalf. Thereafter, Blue Ivy shall have no right or ability, directly or indirectly, to post, publish, authorize, direct, request, encourage, or cause any person or entity to post or publish any content on blueivycoaching.com, including, without limitation, any notice of a business name change, rebranding, successor business, new company, new website, redirect, forwarding page, or any other content identifying, promoting, or linking to Blue Ivy or any successor business, website, or brand. Blue Ivy shall likewise not publish, or cause to be published, on any website, domain name, or platform that it owns, controls, or operates, any statement, notice, or content indicating that its business was formerly known as "Blue Ivy Coaching," or otherwise linking or associating its new business name, website, or brand with "Blue Ivy Coaching" or any of the Ivy Coach Marks six months after the Effective Date. Additionally, Blue Ivy shall pay to Ivy Coach a lump-sum and one-time payment in the amount of forty-nine thousand six hundred and five United States Dollars ($49,605 USD) to avoid the further costs of litigation. The settlement payment shall be made in immediately available funds within five (5) business days after the Effective Date and Blue Ivy's receipt of Ivy Coach's completed Form W-9 and written wire instructions. Blue Ivy shall also fully cooperate in seeking an order from the Court (or requests to third-party site operators) directing the removal of online reviews and other third-party content identifying the business as "Blue Ivy Coaching" or "Blue Ivy Coach" to mitigate alleged confusion in the market. Blue Ivy shall not be responsible for any third party's refusal or failure to remove such content, following Blue Ivy's full cooperation in seeking an order from the Court directing such removal.

2. **Release of Claims**. Each party, on behalf of itself and its parents, subsidiaries, predecessors, successors, assigns, affiliates, employees, directors, officers, members, managers, successors, assigns, agents and representatives releases and forever discharges the other party and its parents, subsidiaries, predecessors, successors, assigns, affiliates, employees, directors, officers, members, managers, successors, assigns, agents and representatives from each and every known or unknown obligation, covenant, liability, right, claim, judgment, demand, debt and cause of action whatsoever, it may have had or has from the beginning of time to the Effective Date arising out of or relating to the Action or the facts alleged therein, including any claim that was or could have been asserted regarding Blue Ivy's use through the Effective Date of "Blue Ivy Coaching," "Blue Ivy Coach," or blueivycoaching.com; provided that no Party releases any obligation under this Agreement. Each Party covenants not to assert any claim released under this Section. Ivy Coach agrees not to assert any claim against Blue Ivy or its released parties based on Blue Ivy's use of "Blue Ivy Coaching," or blueivycoaching.com during the six (6)-month transition period, provided that Blue Ivy complies with Section 1.

3. **Representations and Warranties**. Ivy Coach and Blue Ivy hereby warrant and represent that the entity names set forth above are correct and the signatory for each entity for this Agreement is a duly authorized representative of each Party with the power and authority to execute this Agreement granted by all necessary corporate, limited liability company and other entity action of each respective entity.

4. **No Admission of Liability**. The Parties recognize that the execution of this Agreement represents the compromise of disputed claims and that the execution of this Agreement is not to be construed as an admission of liability by any party, which is expressly denied. No Party makes any admission concerning the ownership, validity, enforceability, strength, or scope of any mark, infringement, likelihood of confusion, damages, or entitlement to attorneys' fees or costs.

5. **Assignment**. The Parties hereby represent and warrant that they have not assigned, transferred or sold their respective rights (or any part thereof), causes of action or claims that are the subject of this Agreement.

6. **Dispute Resolution/Jurisdiction/Attorney Fees**. In the event of any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement cannot be resolved through good faith negotiation, such dispute shall be determined by binding arbitration administered by the American Arbitration Association ("AAA"), before one arbitrator selected in accordance with the AAA Commercial Arbitration Rules. The arbitration shall be conducted under the AAA Commercial Arbitration Rules. The Parties shall be entitled to make all appearances by video conference including at any hearing. The arbitrator's decision is final and binding, subject to judicial review under the Federal Arbitration Act. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without regard to conflicts of law principles. The prevailing party shall be entitled to recover its costs, expenses and reasonable attorneys' fees incurred in connection with any such arbitration, litigation or proceeding.

7. **Entire Agreement**. This Agreement contains the entire understanding of the Parties on the subject of this Agreement, and supersedes any and all prior agreements between the Parties, whether written or oral, relating to any or all matters covered by and contained or otherwise dealt with in this Agreement.

8. **Binding Agreement**. The terms of this Agreement are binding upon and inure to the benefit of each of the Parties hereto and their respective heirs, representatives, successors and permitted assignees.

9. **Severability**. In the event that any provision of this Agreement, or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect and the application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the Parties hereto.

10. **Assignment; Amendments**. This Agreement may not be assigned, transferred, altered, modified or amended except by a writing signed by the Parties hereto.

11. **Interpretation.** This Agreement is the result of mutual drafting and, as such, its terms shall not be construed more harshly against or more favorably for any party hereto. The fact that one of the Parties may have initially drafted or structured any provision of this Agreement shall not be considered in construing the particular provision either in favor of or against such party.

12. **Counterparts**. This Agreement may be executed simultaneously or in one or more counterparts, each of which shall be deemed an original but each of which together shall constitute one and the same instrument. Any signature delivered by a party via facsimile, electronic mail, or electronic-signature platform shall be deemed an original signature hereto.

[*signatures on following page*]

**IN WITNESS WHEREOF**, the Parties, intending to be legally bound, sign this Agreement as of the Effective Date.

**Ivy Coach, Inc.**

DocuSigned by:

By: Brian Taylor
2003730EFA3042A...

Name: Brian Taylor

Title: Managing Partner

Date: 8/10/2026

**BIC Blue Ivy Coaching A&M, LLC**

Signed by:

By: Marcus DeWitt
19958DAD178D400...

Name: Marcus DeWitt

Title: Director

Date: 8/10/2026